UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KIMBERLY TURNER,                                    :
                                                    :
                          Plaintiff,                :
                                                    :
            v.                                      :
                                                    :          **DECISION & ORDER**
DELTA AIRLINES, INC.,                               :          19-cv-2580 (WFK) (RER)
                                                    :
                          Defendant.                :
-----------------------------------------------------------X

Kimberly Turner ("Plaintiff") brings the instant action against Delta Airlines ("Defendant") alleging violations of the American with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), New York State Human Rights Law, NYS Executive Law § 296, *et seq.* ("NYSHRL"), and New York City Human Rights Law, New York City Administrative Code § 8-107, *et seq.* ("NYCHRL").  Before the Court is Defendant's motion for summary judgment as to all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The Court GRANTS Defendant's motion with respect to Plaintiff's federal claims and DECLINES to exercise supplemental jurisdiction over Plaintiff's remaining state and municipal claims.

## BACKGROUND

The following facts are drawn from the parties' Local Rule 56.1 Statements.  Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed.  The Court construes the facts in the light most favorable to Plaintiff, the non-moving party.  Fed. R. Civ. P. 56(c); *Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005) (articulating this requirement).

### I.    *Delta's Policies*

In accordance with Federal Aviation Administration ("FAA") mandates, Delta requires flight attendants to complete four online Computer Based Safety Trainings ("CBTs") per year. [1]

---

[1] Plaintiff disputes this by stating, "Defendant does not require flight attendants on a leave of absence or disability leave or FMLA leave on the day of the deadline."  Plaintiff's Response ("Pl.'s Resp.") to Def.'s R. 56.1 St. ¶ 9.

Defendant's Rule 56.1 Statement ("Def's. R. 56.1 St.") ¶ 9.  Failure to complete a CBT within a two-month time frame can result in the initiation of performance development procedures.  *Id.* ¶ 11.

Under Delta's performance development policy, there are four levels of intervention between managers and employees.  *Id.* ¶ 13.  These include: (1) verbal coaching; (2) written coaching; (3) issuance of a corrective action notice ("CAN"); and (4) issuance of a final corrective action notice ("FCAN").  *Id.* ¶¶ 14-17.  A flight attendant's receipt of an FCAN may result in review for termination for any infraction or failure to demonstrate adequate improvement during the 36-month period the FCAN remains in an employee's file.  *Id.* ¶ 17.  The decision of whether to issue a CAN or FCAN is made by a flight attendant's Field Service Manager ("FSM").  A Base Manager, Base Director, and Human Resources Manager then review the FSM's decision.  Any of these individuals is authorized to veto the CAN or FCAN decision if they believe it is unwarranted.  *Id.* ¶ 18.

Delta contracts with a third party, Sedgwick Claims Management ("Sedgwick"), to administer its disability and Family and Medical Leave Act ("FMLA") leave programs.  *Id.* ¶ 24.  Flight attendants approved for FMLA leave must still comply with Delta's absence notification policy.  *Id.* ¶ 30.  While on FLMA leave, flight attendants are required to provide the Management Support Team ("MST") with 30 days' notice before an absence, when feasible, or as soon after the absence is known, when unforeseeable, and to contact Sedgwick on the same day as the first absence.  *Id.* ¶¶ 25, 30.  The notification policy also requires flight attendants to

---

Plaintiff seems to be disputing that Defendant requires flight attendants to "timely" complete CBTs, but not the more general point that Defendant requires flight attendants to complete four CBTs a year.

contact MST at least three hours before the sign-in time for their first trip in a flight rotation.  *Id.*
¶ 30.

## II.    *Plaintiff's Health and Work History*

Plaintiff worked as a flight attendant for Defendant from October 1, 2014 until her
termination on July 27, 2018.  Between October 2014 and January 2017, Plaintiff worked for
Defendant in Atlanta, Georgia.  Plaintiff's Rule 56.1 Statement ("Pl.'s R. 56.1 St.") ¶ 1.  From
February 2017 until July 2018, Plaintiff worked for Defendant in Queens, New York.  Def.'s R.
56.1 St. ¶ 58.

In June 2010, Turner was diagnosed with chronic myelogenous leukemia.  *Id.* ¶ 33.
Plaintiff's cancer treatment requires taking daily chemotherapy pills.  Pl.'s R. 56.1 St. ¶ 3.  As a
result of her leukemia and treatment, Plaintiff often experiences severe exhaustion, dehydration,
and body cramping.  *Id.* ¶ 4.

Plaintiff was approved for FMLA leave on October 3, 2015 and was approved to use
FMLA leave for four cancer-related episodes per year.  Def.'s R. 56.1 St. ¶ 37.  Upon receiving
this approval, Plaintiff took FMLA-approved leave four times prior to the end of 2015.  *Id.* ¶ 38.
On December 21, 2015, Plaintiff's FMLA approval changed from four episodes per year to one
episode and one treatment per month.  *Id.* ¶ 39.  Subsequently, Turner was approved for leave on
over 75 occasions between 2015 and 2018.  *Id.* ¶ 40.

Over the course of her employment, Plaintiff committed several workplace infractions for
which she received continuous coaching per Delta's performance development policy.  Between
October 2014 and July 2015 alone, Plaintiff received coaching on at least seven occasions [2] as a

---

[2] While Plaintiff "disputes the implication that [these coachings] were properly given," she does not dispute that she
received these coachings.  Pl.'s Resp. to Def's 56.1 ¶ 34.

result of her failure to complete a CBT, her noncompliance with Delta's policy on communicating with crew members, and several unscheduled and unexcused absences, all in violation of Delta policy.  *Id.* ¶ 34.  This coaching included informal verbal, formal verbal, and written instruction, which all falls under the first and second levels of Delta's performance development policy.  *See id.* ¶¶ 14-17.

On July 15, 2015, Plaintiff received another written coaching from her manager Edward Lane following several unexcused absences. As the coaching record describes, between October 2014 and July 2015, Plaintiff was absent on fifteen days.  *Id.* ¶ 35.  Plaintiff received informal verbal coaching from FSM Lane again on September 25, 2015 for yet another unexcused absence.[3]  *Id.* ¶ 36.

On January 13, 2016, Plaintiff received a corrective action notice, the third of four steps in Delta's performance development policy.[4]  *Id.* ¶ 43.  Plaintiff received this notice after she failed to get approval for FMLA leave for a December 24, 2015 absence.  *Id.*  The absence occurred after Plaintiff experienced major body cramps in the flight attendant lounge in the Atlanta airport and called in late under Delta's call-in procedures.  Pl.'s Resp. to Def.'s R. 56.1 St. ¶ 12; Def's R. 56.1 St. ¶ 6 ("[E]mployees are required to provide at least three hours' advance notice before the assignment report time to the Management Support Team ("MST") and the IFS scheduling department if they are unable to cover a flight assignment.").  Plaintiff appealed the denial of FMLA coverage for her absence on December 24, 2015, but Sedgwick denied her

---

[3] While Plaintiff "disputes the implication that [this coaching] was properly given," she does not dispute that she received this coaching.  Pl.'s Resp. to Def's 56.1 ¶ 36.

[4] While Plaintiff disputes that the absences cited in the corrective action notice were accountable, she does not dispute that the corrective action notice was issued.  Pl.'s Resp. to Def's 56.1 ¶ 43.

appeal on February 10, 2016. Def's R. 56.1 St. ¶ 44. Therefore, Plaintiff remained on a corrective action notice as of January 13, 2016.[5] *Id.*

Plaintiff's next performance development arose on June 22, 2016, when she incurred a Failure to Cover ("FTC") after failing to report for an assigned flight. *Id.* ¶ 47. On July 11, 2016, Plaintiff met with her new FSM, Rakesh Nayar, who issued informal verbal coaching to Plaintiff regarding the January 2016 corrective action notice and the June 2016 FTC.[6] *Id.* ¶ 48. (Plaintiff's FSM switched from Lane to Nayar due to changes at the Atlanta Base Leadership Team. *Id.* ¶ 45.)

On November 21, 2016, FSM Nayar issued Turner another informal verbal coaching after Plaintiff was absent on October 9, 2016. However, this absence was ultimately approved by Sedgwick on November 23, 2016 after Plaintiff submitted a medical certification. *Id.* ¶ 51.

Plaintiff's next infraction occurred a month later, when she failed to timely complete a CBT by December 20, 2016.[7] *Id.* ¶¶ 52-53. On January 13, 2017, Plaintiff failed to cover an assignment or provide sufficient advance notice of her absence. Sedgwick did not approve FMLA leave for this absence.[8] *Id.* ¶ 54.

Two weeks later, on January 27, 2017, FSM Nayar issued Plaintiff a final corrective action notice, the last step in Delta's performance development system. The notice came after

---

[5] "While Plaintiff does not dispute that her appeal was denied, Plaintiff disputes the implication that it was properly denied." Pl.'s Resp. to Def's 56.1 ¶ 44.
[6] "While Plaintiff does not dispute that the informal verbal coaching was recorded, Plaintiff disputes the implication that it was properly given." Pl.'s Resp. to Def's 56.1 ¶ 48.
[7] "While Plaintiff does not dispute that she did not complete the CBT by the deadline, Plaintiff states that the missed deadline was caused by extreme fatigue and exhaustion brought on by her leukemia." Pl.'s Resp. to Def's 56.1 ¶ 53.
[8] While Plaintiff does not dispute that she failed to cover an assignment on January 13, 2017, she seems to dispute the propriety of Sedgwick's denial, stating, "Plaintiff was unable to work during this period due to her cancer." Pl.'s Resp. to Def.'s R. 56.1 St. ¶ 54.

Plaintiff "incurred 1 FTC on 1/13/17, 1 UPS on 1/14/17 and [did not complete] Safety CBT by 12/20/16."[9]  *Id.* ¶ 55.

Soon after, on January 31, 2017, Delta approved Plaintiff's request to change her base from Hartsfield-Jackson International Airport in Atlanta, Georgia to John F. Kennedy Airport in Queens, New York.  *Id.* ¶ 58.  At that time, Plaintiff's FSM changed from Nayar to Lawrence Brown.  *Id.*  Upon moving to New York City, in March 2017, Plaintiff took a full-time job as a Performance Manager at the Council for Airport Opportunity, earning an annual salary of $68,000.00.  *Id.* ¶¶ 59-60.  During her employment with the Council, Plaintiff worked approximately one shift per month for Delta between March and August 2017.  *Id.* ¶ 61.

From October 28, 2017 to February 3, 2018, Delta approved Plaintiff's request for short-term disability leave.  *Id.* ¶ 63.

In early November 2017, while on short-term disability leave, Plaintiff discussed job accommodations with FSM Brown.  *Id.* ¶ 64.  On November 14, 2017, FSM Brown sent Plaintiff Defendant's accommodations policy and provided contact information for Defendant's accommodations department.  *Id.*  Defendant's accommodations department directed Plaintiff to a website listing potential job accommodation options.  However, Plaintiff did not apply for any of these positions because they allegedly paid less than her flight attendant position.  *Id.* ¶ 67.

Plaintiff also emailed the accommodations department in March 2018 about exploring another role "that was conducive to her medical condition," Pl.'s R. 56.1 St. ¶ 38, but Plaintiff never received a response.  *Id.* ¶ 39.

---

[9] "While Plaintiff does not dispute she received the Final Corrective Action Notice, Plaintiff disputes that the Final Corrective Action Notice was properly issued."  Pl.'s Resp. to Def.'s R. 56.1 St. ¶ 55.

On March 16, 2018, Plaintiff called out of work sick due to symptoms related to her leukemia.  Pl.'s R. 56.1 St. ¶ 34.  On March 18, 2018, Plaintiff provided FSM Brown with a letter from her doctor corroborating her absence was due to her cancer.  *Id.* ¶ 35.

On April 27, 2018, Plaintiff failed to timely complete a quarterly CBT.  Def.'s R. 56.1 St. ¶ 76; Pl.'s R. 56.1 St. ¶ 40.  On May 16, 2018, Plaintiff met with FSM Brown to discuss this issue.  Pl.'s R. 56.1 St. ¶ 42.  On Brown's request, Plaintiff explained in a May 19, 2018 email that on the day of the deadline, she was experiencing "severe lower back pain from that [sic] was a result of the physical strains of moving from one home to another" and noted she took Advil, leading her to fall asleep and miss the deadline.  Def.'s R. 56.1 St. ¶ 79.  Plaintiff's email also noted she "had intermittent FMLA leaves" which, "along with [her] back pain, unfortunately caused [her] to complete the CBT roughly 15-17 hours post-deadline."  Pl.'s R. 56.1 St. ¶ 43.

On June 11, 2018, FSM Brown recommended Plaintiff's suspension.  Def.'s R. 56.1 St. ¶ 81.  On July 13, 2018, Defendant suspended Plaintiff.  *Id.* ¶ 82.  Defendant ultimately terminated Plaintiff's employment on July 27, 2018.  Pl.'s R. 56.1 St. ¶ 59.

III.    Procedural Background

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 5, 2018.  Plaintiff received a Notice of Right to Sue from the EEOC on February 15, 2019.  Plaintiff filed the instant Complaint on May 1, 2019.

**LEGAL STANDARD**

The standard for summary judgment is well settled.  Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).

An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact."  *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (internal quotation marks and citation omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Courts must be "guided by the substantive evidentiary standards that apply to the case" in determining whether a factual dispute warrants submission to a jury.  *Id.* at 255.

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (per curiam).  A question of material fact does not exist merely because plaintiff disagrees with the deposition testimony and documentary evidence produced by defendant.  *See Anderson*, 477 U.S. at 247-48. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  Rather, the nonmoving party must put forth specific facts showing there is a genuine issue for trial.  *Anderson v. National Grid, PLC*, 93 F. Supp. 3d 120, 130 (E.D.N.Y. 2015) (Bianco, J.) (quoting *Matsushita*, 475 U.S. at 574).

## DISCUSSION

Plaintiff brings claims against Defendant alleging disability discrimination in the form of discriminatory termination and failure to accommodate under the ADA.  Plaintiff also brings a retaliation claim under the ADA.  Additionally, Plaintiff brings disability discrimination and

retaliation claims under the NYSHRL and NYCHRL.  Defendant moves for summary judgment

with respect to all claims.  The Court considers each claim in turn.

## I.  ADA: Disability Discrimination

### a.  Discriminatory Termination Claim

Plaintiff alleges her termination was a form of disability discrimination in violation of the

ADA.  For the following reasons, the Court grants Defendant's motion for summary judgment as

to this claim.

Disability discrimination claims under the ADA are subject to the burden shifting

analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Gorzynski v.*

*JetBlue Airways Corp.*, 596 F.3d 93, 105–06 (2d Cir. 2010).  As the Second Circuit has

described, under the *McDonnell Douglas* framework, plaintiffs bear the initial burden of proving

by a preponderance of the evidence a prima facie case of discrimination.  *Heyman v. Queens*

*Village Comm. for Mental Health for Jamaica Cmty. Adolescent Prog., Inc.*, 198 F.3d 68, 72 (2d

Cir. 1999).  To establish a prima facie discrimination claim under the ADA, a plaintiff must

show: (1) her employer was subject to the ADA; (2) she was disabled within the meaning of the

ADA; (3) she was otherwise qualified to perform the essential functions of the job, with or

without reasonable accommodation; and (4) she suffered an adverse employment action because

of her disability.  *McMillan*, 711 F.3d at 125 (internal quotation marks and citation omitted).  In

assessing causation under the fourth step, courts in the Second Circuit consider whether

discrimination was the but-for cause of the adverse action.  *Natofsky v. City of New York*, 921

F.3d 337, 348 (2d Cir. 2019).

If a plaintiff makes out a prima facie case of discrimination, the defendant must produce

evidence supporting an explanation for the termination which, "taken as true, would permit the

conclusion that there was a nondiscriminatory reason for the adverse action." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (internal quotation marks omitted) (finding defendant's explanation that termination was due to declining sales and dissatisfaction with plaintiff's job performance sufficiently rebutted presumption of discrimination). "Federal courts do not have a 'roving commission to review business judgments,' and may not 'sit as super personnel departments, assessing the merits—or even the rationality—of employers' non-discriminatory business decisions.'" *Greene v. Brentwood Union Free Sch. Dist.*, 966 F. Supp. 2d 131, 156 (E.D.N.Y. 2013) (Feuerstein, J.) (citation omitted), *aff'd*, 576 F. App'x 39 (2d Cir. 2014). Indeed, a court should not second-guess an employer's proffered explanation so long as it is not unlawfully discriminatory. *See id.*

If the employer proffers a legitimate, non-discriminatory reason for termination, "the presumption of discrimination 'drops out of the picture,' and the plaintiff bears the burden of demonstrating 'by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Cantres v. N.Y.P. Holdings, Inc.*, 14-CV-7257 (WFK) (RER), 2016 WL 5867046, at *4 (E.D.N.Y. Sept. 30, 2016) (Kuntz, J.) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). It is insufficient for a plaintiff to merely "put forward evidence from which a factfinder could find that the employer's explanation . . . was false.' Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, i.e., whether the record contains sufficient evidence to support an inference of discrimination." *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 140 (E.D.N.Y. 2015) (Bianco, J.) (quoting *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000)).

Here, Plaintiff alleges "Defendant engaged in an unlawful discriminatory practice by terminating Plaintiff because of her diagnosis with chronic myelogenous leukemia which qualifies as a disability within the meaning of the ADA." Compl. ¶ 53. This claim fails for two reasons. First, Plaintiff cannot make out a prima facie case of discrimination. Second, even if Plaintiff could state such a claim, Defendant proffers a legitimate, non-discriminatory reason for Plaintiff's termination. Plaintiff does not show Defendant's proffered explanation is pretextual.

i.    Prima Facie Case

Plaintiff only partially meets the requirements to establish a prima facie case, yet all must be satisfied in order for her claim to succeed. The Court accepts Defendant is subject to the ADA, and it assumes, without deciding, Plaintiff's leukemia qualifies as a disability under the ADA. However, to make out a prima facie case, Plaintiff must demonstrate she was "otherwise qualified" to perform the "essential functions" of the flight attendant position, the third prong of the test outlined above, which she does not. Plaintiff must also satisfy the fourth prong by showing her termination was causally connected to her disability, which, again, she does not.

In order to show she suffered an adverse consequence—here, termination—because of her disability, Plaintiff would need to show that she would not have been terminated but for her disability. *See Natofsky*, 921 F.3d at 348. Based on the record, Plaintiff cannot prove she was terminated because of her disability rather than because of her repeated policy infractions. As noted above, Plaintiff was terminated after failing to timely complete a CBT due on April 27, 2018 while she was on a final corrective action notice issued in January 2017. And, as explained in Defendant's performance development outline, any policy infraction that occurs during the 36-month period that a final corrective action notice is active can result in review for

11

termination.  ECF No. 31-10 (Performance Dev. Policy), Guyette Decl., Ex. J.  Failure to
complete a CBT is one such policy infraction.  Def.'s R. 56.1 St. ¶ 9.

Plaintiff attempts to overcome this limitation by referencing seemingly supportive
caselaw.  For instance, Plaintiff cites *McMillan v. City of New York* for the proposition that her
policy infractions, including her late CBT completion, were a direct result of her disability, and
therefore equate to termination because of her disability.  *See* Plaintiff's Memorandum in
Opposition ("Pl.'s Mem.") at 13; *McMillan v. City of N.Y.*, 711 F.3d 120, 129 (2d Cir. 2013).
However, Plaintiff's comparison to the facts of *McMillan* is inapposite.  There, the plaintiff, who
was regularly late to his job as a city employee but worked late to make up for his tardiness, was
diagnosed with schizophrenia.  *McMillan*, 711 F.3d at 123.  The plaintiff's daily schizophrenia
medication made him drowsy, which resulted in his late arrival to work.  Both parties agreed the
plaintiff's medication was the direct cause of his tardiness: "The [employer] City makes no
allegations that McMillan malingers; instead, it is undisputed that his inability to arrive at work
by a specific time is the result of the treatment for his disability."  *Id.*  Because it was
"undisputed that McMillan was tardy because of his disability and that he was disciplined
because of his tardiness," there was no question of pretext.  Instead, the Second Circuit held
McMillan "need only demonstrate that, with reasonable accommodations, he could have
performed the essential functions of his job."  *Id.* at 129.

Unlike in *McMillan*, here the parties dispute whether Plaintiff was ultimately terminated
because of conduct that was a direct result of her disability.  Plaintiff alleges she did not
complete the CBT in a timely manner in part because she used FMLA leave within the two-
month period given to flight attendants to complete the training, and therefore, she had less time
to complete the CBT than other employees.  Pl.'s Mem. at 6.  Defendant, on the other hand,

argues Plaintiff's failure to timely complete the CBT "was not linked to her medical condition."
Def.'s Reply at 2.  Defendant cites Plaintiff's explanatory email from May 19, 2018 in which she
wrote, "[t]his email serves as an explanation of why I completed the last two modules of my
Quarter Two CBT one day post-deadline.  I have been experiencing severe lower back pain from
that was a result of the physical strains of moving from one home to another. . . . The evening of
the deadline, I took pain medicine to relieve my back pain and it caused severe drowsiness.  I fell
asleep and did not wake up until early morning post-CBT deadline."  ECF No. 31-26 (May 19,
2018 Email), Guyette Decl., Ex. Z.  As such, it is inappropriate to rely on *McMillan*'s holding
that a plaintiff who is disciplined for conduct that is undisputedly caused by his disability is
functionally disciplined because of his disability.

In a declaration submitted along with her opposition to Defendant's motion for summary
judgment, Plaintiff states she missed the April 2018 CBT deadline "[o]wing to the many missed
days caused by my cancer," but includes no reference to the moving-related back pain she
referenced in her May 19, 2018 email.  Pltf. Decl. ¶ 38.  However, this declaration is at odds with
Plaintiff's prior deposition testimony, in which she stated she "let [FSM Brown] know that [she]
had back pains from moving and packing from boxes from [her] move to New Orleans, and that
[she] took some pain medication, which [she is] sensitive to, and [she] fell asleep, out of [her]
control.  And when [she] woke up, [she] realized [she] had not completed the last one to two
modules."  ECF No. 31-1 (K. Turner Dep.), Guyette Decl., Ex. A, at 253:17-25.  Because
Plaintiff's declaration conflicts with her prior sworn deposition testimony, Plaintiff's later
allegation that she missed the CBT deadline only because of "many missed days caused by [her]
cancer" does not raise a factual issue that would defeat Defendant's motion for summary
judgment.  See *Zorbas v. U.S. Trust Co., N.A.*, 48 F. Supp. 3d 464, 472 (E.D.N.Y. 2014) (Brodie,

J.) ("Under the 'sham affidavit' rule, 'factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [the plaintiff's] own prior deposition testimony.'" (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001))).

Further, Plaintiff's argument that she had less time to complete the CBT modules than other non-disabled flight attendants—and therefore was fired for a failure caused by her disability—does not hold water. Companies are permitted to apply generally applicable policies to all employees. *See, e.g.*, *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir. 1997) (plaintiff's violation of company policy was a legitimate, nondiscriminatory reason for terminating plaintiff's employment); *Brown v. The Pension Boards*, 488 F. Supp. 2d 395, 406 (Sweet, J.) (S.D.N.Y. 2007) ("Certainly, an employer is entitled to discharge an employee who fails to follow company rules and fails to appear for work without notification, even if the absences are attributable to a medical problem." (citation omitted)).

Finally, Plaintiff has provided no evidence other employees who miss CBT deadlines for *any* reason while on final corrective action notices are treated differently than Plaintiff. As such, Plaintiff has failed to raise an inference of discrimination. *See Anderson*, 93 F. Supp. 3d at 143; *Sethi v. Narod*, 12 F. Supp. 3d 505, 546 (E.D.N.Y. 2014) (Brodie, J.) ("Plaintiff's allegations of unfair treatment fail to raise an inference of discrimination because Plaintiff has failed to establish [his employer] treated him less favorably than a similarly situated employee outside his protected group.").

ii.     Legitimate, Non-Discriminatory Explanation

Even assuming Plaintiff were able to make out a prima facie case, her discriminatory termination claim fails for a second reason: Defendant provides a non-discriminatory explanation for Plaintiff's termination.  Under the *McDonnell Douglas* framework, once a plaintiff states a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for termination.  If a defendant does so, the burden shifts back to plaintiff to show the defendant's proffered reason is pretextual.  Here, Plaintiff cannot make this showing.

Defendant offers a legitimate explanation for Plaintiff's termination: she failed to complete a required CBT while on a final corrective action notice.  ECF No. 31-4 (L. Brown Dep.), Guyette Decl., Ex. D, at 128:21-23.  Defendant's progressive discipline policy clearly explains any infraction that occurs during the active lifetime of a final corrective action notice can result in termination.  ECF No. 31-10 (Performance Dev. Policy), Guyette Decl., Ex. J.

Plaintiff argues any legitimate, non-discriminatory rationale proffered by Defendant is pretextual because of (1) the differences between drafts of Plaintiff's termination letter and (2) emails from FSM Brown referencing Plaintiff's disability leave.  However, neither of these arguments overcomes Defendant's legitimate explanation for Plaintiff's termination.  Showing pretext does not mean merely putting forward evidence from which a factfinder could find that an employer's explanation was false.  Rather, "the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, i.e., whether the record contains sufficient evidence to support an inference of discrimination."  *Anderson*, 93 F. Supp. 3d at 140.

FSM Brown prepared at least four drafts of a letter to Delta's NYC Base Manager recommending Plaintiff's termination.  *See* ECF No. 33-19 (June 25, 2018 Ltr.), Myers Decl.,

Ex. S; ECF No. 33-20 (July 5, 2018 Ltr.), Myers Decl., Ex. T; ECF No. 33-21 (July 9, 2018

Ltr.), Myers Decl., Ex. U; ECF No. 33-22 (July 13, 2018 Ltr.), Myers Decl., Ex. V.  According

to Plaintiff, that the earlier drafts of the letter reference Plaintiff's "reliability" record but no

reference to "reliability" is made in the final version shows that Defendant improperly

considered Plaintiff's excused FMLA absences in terminating her.  However, this argument is

unavailing.  All drafts of the letter, including the final version, reflect Defendant's proffered

reason for terminating Plaintiff: her failure to complete a mandated CBT while on a final

corrective action notice.  Contrary to Plaintiff's claim, there is no "shifting explanation" by

Defendant for Plaintiff's termination.  What is more, even if Defendant *did* offer inconsistent

reasons for firing Plaintiff, that does not mean Defendant's proffered reason—Plaintiff's failure

to timely complete the CBT—is pretextual.  *See Mathews v. Huntington*, 499 F. Supp. 2d 258,

266-67 (E.D.N.Y. 2007) (Bianco, J.).

     Similarly, FSM Brown's reference to Plaintiff as someone "known for always calling out

FMLA," No. ECF 33-24 (July 9, 2018 Email), Myers Decl., Ex. X, does not overcome

Defendant's proffered, legitimate reason for Plaintiff's termination.  Even if this reference to

Plaintiff's FMLA leave indicates some animus on Brown's part toward Plaintiff, Brown was not

solely responsible for Plaintiff's termination.  Brown's recommendation for Plaintiff's

termination was reviewed and approved by (1) Human Resources Manager Emily Pardo; (2)

Human Resources General Manager Jennifer Zappia; and (3) Human Resources Director Mary

Wisniewski.  Def.'s R. 56.1 St. ¶ 84.  All these individuals had veto power over Brown's

recommendation, *id.* ¶ 18, but nevertheless approved Plaintiff for termination.  Further, evidence

in the record shows Brown attempted to help Plaintiff timely meet the CBT deadline and

otherwise tried to support Plaintiff, cutting against Plaintiff's attempt to show Brown was

prejudiced against her based on her disability. *See* ECF No. 31-32 (L. Brown April 27, 2018 Texts), Guyette Decl., Ex. FF; ECF No. 31-13 (Perf. Report), Guyette Decl., Ex. M., at 11-13.

Ultimately, Plaintiff fails to provide evidence supporting an inference of discrimination that overcomes Defendant's legitimate explanation. It is well-established that Courts should not second-guess non-discriminatory business decisions, *Greene*, 966 F. Supp. 2d at 156, and this Court heeds this rule. Defendant has offered a legitimate explanation for Plaintiff's termination. Because Plaintiff has failed to put forth evidence showing Defendant's explanation is pretextual, the Court finds Plaintiff fails to meet her burden under the final step of the *McDonnell Douglas* framework.

### b. *Failure to Accommodate Claim*

For the following reasons, the Court grants Defendant's motion for summary judgment as to Plaintiff's next ADA claim, which alleges Defendant's failure to accommodate.

To make a prima facie case of disability discrimination premised on a failure to accommodate, a plaintiff must demonstrate: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006) (internal quotation marks omitted). A "reasonable accommodation may include, inter alia, modification of job duties and schedules, alteration of the facilities in which a job is performed, [and] acquisition of devices to assist the performance of job duties." *McBride*, 583 F.3d at 97.

Notably, to make a claim premised on a failure to accommodate, a plaintiff must show that she did, in fact, request an accommodation. *See Tillman v. Verizon New York, Inc.*, 118 F.

Supp. 3d 515, 540 (E.D.N.Y. 2015) (Spatt, J.) ("[T]he Plaintiff's contention . . . presupposes that she properly sought an accommodation [but the] Court finds that she neither received clearance to return to work or requested an accommodation in accordance with Verizon's established procedures.  She is therefore barred from claiming that such an accommodation was denied.").

Here, Plaintiff alleges FSMs Lane, Nayar, and Brown all failed "to engage in an interactive dialogue with Plaintiff to determine any reasonable accommodation of Plaintiff's disability," both after Plaintiff notified her managers of her condition and after various policy infractions by Plaintiff.  Compl. ¶¶ 16, 17, 19, 22.  This accommodation claim boils down to the argument "Defendant failed to provide any reasonable accommodation or engage in the interactive process to determine whether a reasonable accommodation could be suggested to Plaintiff when she explained over the years how her diagnosis with chronic myelogenous leukemia caused her ability [sic] to complete her training."  *Id.* ¶ 30.

Plaintiff also alleges FSM Brown failed to engage in an interactive dialogue after Plaintiff spoke with him in November 2017 about her leukemia.  According to Plaintiff, during their conversation, Brown "merely informed Plaintiff to contact Delta's job accommodations department to determine alternative jobs that would be best suited for Plaintiff."  *Id*. ¶ 22.  Plaintiff also alleges Brown failed to accommodate Plaintiff by excusing her failure to timely complete the April 2018 CBT.  Pl.'s Mem. at 9.

Finally, Plaintiff alleges Defendant failed to respond to a March 2018 email Plaintiff sent to Defendant's accommodations department about "options of being accommodated in another role that [was] conductive to [her] situation and geographic location."  ECF No. 31-1 (K. Turner Dep.), Guyette Decl., Ex. A, at 158:14-24.

Plaintiff's accommodation claim fails.  Even were the Court to assume Plaintiff meets the first two steps in making a prima facie case—that she is disabled under the ADA, and that Defendant had notice of her disability—the Court finds Plaintiff cannot successfully make out a prima facie case of discrimination based on a failure to accommodate.  As an initial matter, Plaintiff does not address whether she could perform the essential functions of the job with reasonable accommodation.  Further, Plaintiff does not show Defendant refused to make an accommodation she requested.

      i.      <u>Communications with Accommodations Department</u>

Plaintiff discussed job accommodations with FSM Brown in November 2017, while Plaintiff was on short-term disability leave.  Pl.'s Decl. ¶ 32.  FSM Brown directed Plaintiff to Defendant's accommodations office, to which Plaintiff reached out.  *Id.*  Plaintiff then emailed the accommodations department in March 2018 seeking to "explore [her] options of being accommodated in another role that [was] conductive to [her] situation and geographic location." ECF No. 31-1 (K. Turner Dep.), Guyette Decl., Ex. A, at 158:14-24.  However, per Plaintiff's deposition testimony, she did not receive a response to her email.  ECF No. 33-1 (K. Turner Dep.), Myers Decl., Ex. A, at 161:12-15.  Based on the record, Plaintiff did not further pursue an accommodation after not receiving a response from Defendant.

Even construing Plaintiff's March 2018 email as a request for accommodation in the form of reassignment, Plaintiff does not make out a failure to accommodate claim.  Where a plaintiff seeks reassignment as a reasonable accommodation, she must demonstrate "the existence, at or around the time when accommodation was sought, of an existing vacant position to which she could have been reassigned."  *McBride*, 583 F.3d at 97-98.  A plaintiff cannot "satisfy her burden to identify a potential accommodation merely by reciting the formula that her

employer could have reassigned her." *Id.* at 97.  To the extent Plaintiff argues Defendant failed

to accommodate her by reassigning her, then, this claim fails because Plaintiff has not identified

an existing vacant position to which she could have been reassigned.

Further, Plaintiff's allegation that Defendant failed to engage in an interactive process

regarding reassignment is insufficient to state a claim.  An employer's failure to engage in an

interactive dialogue does not form the basis of an ADA claim unless the plaintiff "also

establishes that, at least with the aid of some identified accommodation, she was qualified for the

position at issue." *McBride*, 583 F.3d at 101.  Not only has Plaintiff not identified an existing

vacant position where Defendant could have accommodated her, but she has also not established

she was qualified for an alternative role.  Plaintiff therefore cannot make out a failure to

accommodate claim based on her interactions with Defendant's accommodations department.

ii.    CBT Deadline Accommodation "Request"

Plaintiff also alleges she requested an accommodation through FSM Brown of "an

extension of less than a single day to complete the [April 2018] CBT."  Pl.'s Mem. at 9.

Specifically, Plaintiff cites text messages from May 2, 2018, an in-person conversation on May

16, 2018, and an email on May 19, 2018 in which Plaintiff asked Brown to excuse the deadline.

However, the record does not support Plaintiff's argument that these requests were actually

made.  The text messages from May 2, 2018  contain no accommodation request.  *See* ECF No.

33-17 (May 2, 2018 Texts), Myers Decl., Ex. Q.  Nor does Plaintiff's May 19, 2018 email.

Rather, the email contains Plaintiff's explanation for the missed deadline, but makes no request

to excuse the infraction.  *See* ECF No. 33-18 (May 19, 2018 Email), Myers Decl., Ex. R.  And

Plaintiff's declaration regarding the May 16, 2018 conversation states, "On May 16, 2018, I met

with Brown to discuss the missed deadline and again explained that the cause was medical issues

brought on by my new chemotherapy medication."  Pl.'s Decl. ¶ 42.  Again, Plaintiff makes no

reference to any explicit request for an accommodation.  Without Plaintiff's request for an

accommodation, it was not Defendant's responsibility to suggest an accommodation of its own

accord.  *See McElwee v. Cnty. of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) (explaining it is "the

responsibility of the individual with a disability to inform the employer that an accommodation is

needed.").

Despite this, Plaintiff argues Defendant should have proactively sought to accommodate

or excuse Plaintiff's missed CBT deadline without her so requesting.  Plaintiff argues Defendant

"did not take into account nor even discuss, either with Plaintiff or internally, an accommodation

of her disability for her inability to complete the CBT by the same deadline imposed on non-

disabled flight attendants."  Pl.'s Mem. at 6.  Plaintiff cites testimony from a deposition of Emily

Pardo, an HR manager for Defendant, indicating Defendant did not "ask [Plaintiff] how her

disability impacted her" or how Defendant "could support her in doing her job as a flight

attendant while managing her treatment for her disability."  ECF No. 33-3 (E. Pardo Dep.), Ex.

C, at 80:12-23.  Plaintiff also cites testimony from FSM Brown, in which he stated an employee

who takes FMLA leave at various points within the two-month time period provided to complete

CBTs is subject to the same CBT deadline as all other flight attendants.  ECF No. 33-2 (L.

Brown Dep.), Myers Decl., Ex. B, at 140:7-19.  But this testimony does not indicate Plaintiff

requested an accommodation that was then denied by Defendant.  Again, without a request for

accommodation, Defendant was not obligated to provide one.  *See McElwee*, 700 F.3d at 641.

Finally, Plaintiff did in fact receive an accommodation in the form of the extensive leave

Defendant afforded to her.  Plaintiff was approved for FMLA and short-term disability leave

throughout her employment with Defendant.  Indeed, Plaintiff requested and was approved for

21

leave over 75 times during her three-and-a-half years of employment.  Def.'s R. 56.1 St. ¶ 40.

As courts in this Circuit have held, leave is a reasonable accommodation.  *See, e.g.*, *Booker v.*

*Soho Studio Corp.*, 17-5426 (PKC) (SMG), 2020 WL 363912, at *5 (E.D.N.Y. Jan. 22, 2020)

(Chen, J.).

## II.      ADA: Retaliation

Plaintiff next alleges Defendant retaliated against her in violation of the ADA.  Plaintiff

claims she "engaged in protected activity" by "informing Defendant of her diagnosis with

chronic myelogenous leukemia."  Compl. ¶ 62.

Retaliation claims under the ADA are also analyzed under the *McDonnell Douglas*

burden-shifting framework.  *Choi v. Liberty Mut. Ins. Co.*, 16-CV-5392 (WFK), 2021 WL

790381, at *9 (E.D.N.Y. Feb. 9, 2021) (Kuntz, J.).  To establish a prima facie case of retaliation,

a plaintiff must show (1) participation in a protected activity; (2) that the defendant knew of the

protected activity; (3) an adverse employment action; and (4) a causal connection between the

protected activity and the adverse employment action.  *Kessler v. Westchester Cty. Dept. of Soc.*

*Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006) (ADEA); *Weissman v. Dawn Joy Fashions, Inc.*,

214 F.3d 224, 234 (2d Cir. 2000) (reciting substantially identical elements under the ADA).

Plaintiff fails to set forth a prima facie case of retaliation for two reasons.  First, she fails to show

she engaged in protected activity.  Second, even if the Court were to assume Plaintiff did engage

in protected activity, she fails to show a causal connection between that activity and her

termination.

"Protected activity" is action taken to protest or oppose discrimination prohibited by the

ADA.  *Natofsky*, 921 F.3d at 354.  Plaintiff alleges her request for an excused absence on March

16, 2018 was a request for accommodation, and thus qualified as protected activity.  However, as

already addressed in the failure-to-accommodate section *supra*, Plaintiff's only interaction with Defendant nearing a request for accommodation was her contact with Defendant's accommodations department in November 2017 and March 2018.

Further, even if Plaintiff's communications with FSM Brown regarding the March 16, 2018 absence constituted protected activity, Plaintiff nevertheless fails to show a causal connection between that activity and her termination. As Defendant highlights, Defendant tried to help Plaintiff meet the April 2018 CBT deadline even after Plaintiff's communications about her March 16, 2018 absence. *See* ECF No. 31-32 (April 27, 2018 Texts), Guyette Decl., Ex. FF. There is no indication from the record Defendant planned to seek Plaintiff's termination until she missed the April 2018 CBT deadline.

Accordingly, Plaintiff fails to state a prima facie retaliation claim. Even if Plaintiff were to state a prima facie case, she would not be able to state a retaliation claim under *McDonnell Douglas*. Defendant proffers a legitimate reason for Plaintiff's termination, and as previously addressed, Plaintiff does not show that reason is pretextual.

### III.    NYSHRL and NYCHRL: Discrimination and Retaliation

Plaintiff also raises retaliation and discrimination claims under the New York State Human Rights Law. As with her ADA claims, Plaintiff alleges she engaged in protected activity by informing Defendant of her diagnosis; Defendant failed to provide reasonable accommodation to Plaintiff; and Defendant retaliated against Plaintiff by terminating her employment. Compl. ¶¶ 72-77.

Plaintiff further alleges retaliation and discrimination under the New York City Human Rights Law. Compl. ¶¶ 84-90, 96.

Having disposed of Plaintiff's claims under the ADA, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state and municipal claims arising under the NYSHRL and NYCHRL. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (internal quotation marks and citation omitted)).

## CONCLUSION

For the reasons discussed herein, the Court finds, with respect to Plaintiff's ADA claims, there is no genuine issue of material fact and no rational jury could find in her favor. Granting summary judgment to Defendant as to these claims is, therefore, proper. Moreover, in light of the Court's dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL and NYCHRL claims, which are dismissed without prejudice to renew in state court. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 1, 2023
Brooklyn, New York

24